UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMES PATTERSON,                                              :

                Plaintiff,                    :        13 Civ. 0194 (PAC) (AJP)

          -against-                            :        **REPORT AND RECOMMENDATION**

WESTCHESTER COUNTY, CORRECT CARE           :
SOLUTIONS, LLC, NEW YORK CORRECT
CARE SOLUTIONS, P.C., SERGEANT GARRETT,:
SERGEANT BELL and NURSE PRACTITIONER
ASHA SAMUEL,                                                 :

              Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Paul A. Crotty, United States District Judge:**

             Pro se plaintiff James Patterson brings this action pursuant to 42 U.S.C. § 1983 and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., alleging violations of his

constitutional rights arising from his medical treatment for an ankle injury at the Westchester

County Jail.  (Dkt. No. 12: Am. Compl.)  Presently before the Court are defendants' motions to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 19: Westchester Cnty. Notice of Motion;

Dkt. No. 22: Defs. Notice of Motion.)  Patterson did not submit opposition papers and his time to

do so has expired.  (See Dkt. No. 17: 1/6/14 Order.)

             For the reasons set forth below, defendants' motions should be <u>GRANTED</u>.

**<u>FACTS</u>**

             Patterson, an inmate at the Westchester County Jail in Valhalla, New York, injured

his ankle playing basketball at approximately 5:45 p.m. on Saturday, December 1, 2012.  (Dkt. No.

12: Am. Compl. ¶ II.D.)  Nurse Practitioner Asha Samuels immediately saw Patterson in the sick call area.  (Am. Compl. ¶ II.D.)  Patterson requested an x-ray right away because his ankle was severely swollen and discolored.  (Am. Compl. ¶ II.D.)  Nurse Samuels informed Patterson that he had to wait until Monday for an x-ray, and issued him an Ace bandage, ice and Motrin.  (Am. Compl. ¶¶ II.D, III.)  Patterson received Motrin for the pain again on Sunday, December 2, 2012. (See Am. Compl. Atts.: 12/3/12 Ltr. to Deputy Comm'r Smithson; 12/3/12 Ltr. to Warden Rhodes; 12/4/12 Grievance Form.)  On Monday, December 3, 2012, Patterson reported to the sick call area complaining of severe pain and inquiring about the x-ray.  (Am. Compl. ¶ II.D.)  He received Motrin for the pain and was told he had to wait for the x-ray.  (Am. Compl. ¶ II.D.)

Between the time of his injury and December 3, 2012, Patterson attempted to submit a grievance to Sergeants Bell and Garrett, who refused to accept it because "the issue was non-grievable" and declined to notify their supervisors.  (Am. Compl. ¶ II.D(A).)[1]  Patterson wrote to Deputy Commissioner Smithson and Warden Rhodes complaining about his pain and that he had not yet received an x-ray.  (Am. Compl. ¶ II.D(A); Am. Compl. Atts.: 12/3/12 Ltr. to Deputy Comm'r Smithson; 12/3/12 Ltr. to Warden Rhodes.)

On Tuesday, December 4, 2012, Patterson was called to the clinic for his x-ray.  (Am. Compl. ¶ II.D.)  Patterson was not given a cane or crutches to get to or from the clinic and had "to hobble around to said location."  (Am. Compl. ¶ II.D(A); see Am. Compl. ¶¶ II.D(B)-(C), III.)  Patterson was told he would have to wait for the results because they had to be sent out for analysis.  (Am. Compl. ¶ II.D(A).)

---

[1]  Citations to subsections of paragraph II.D refer to the typed pages marked (A)-(C) attached to Patterson's Amended Complaint, which appear at pages 5-7 on the ECF docketed copy.

On Friday, December 7, 2012, after submitting a Health Service Request complaining of severe pain and requesting his x-ray results, a nurse informed Patterson that the results were not ready.  (Am. Compl. ¶ II.D(A); Am. Compl. Att.: 12/7/12 CCS Health Serv. Request.)  Patterson told the nurse about the Sergeants' refusal to accept his grievance, and the nurse said "that she would speak to her supervisor" but that "'if something were really wrong then the doctor would have called already.'" (Am. Compl. ¶ II.D(A).)

On Wednesday, December 12, 2012, a medical provider called Patterson to the clinic and told him that he had torn ligaments and should not walk without crutches.  (Am. Compl. ¶ II.D(A)-(B).)  Patterson was issued the only available crutches, which were too short.  (Am. Compl. ¶ II.D(A).)  Sgt. Garrett stopped Patterson when he was on his way back from the clinic to ask about his "allegations pertaining to [Sgt. Garrett] not accepting [Patterson's] grievance," and "attempted to have [Patterson] write a statement recanting [his] story."  (Am. Compl. ¶ II.D(B).)  On Friday, December 14, 2012, Patterson complained that the crutches were too small and that he was experiencing severe pain and discomfort.  (Am. Compl. ¶ II.D(B).)  A nurse saw Patterson on December 15, 2012, and informed him that there were no other crutches available, he should keep his feet elevated, and new crutches would be available soon.  (Am. Compl. ¶ II.D(C).)

## ANALYSIS

## I.    LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

### A.    The Twombly-Iqbal "Plausibility" Standard

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require

"detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."</u>  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"))[2]

   Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[3]

### B. <u>Consideration of Documents Attached to the Amended Complaint</u>

   A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." <u>Vassilatos</u> v. <u>Ceram Tech Int'l, Ltd.</u>, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[2] Accord, <u>e.g.</u>, <u>Affinity LLC</u> v. <u>GfK Mediamark Research & Intelligence, LLC</u>, 547 F. App'x 54, 55-56 (2d Cir. 2013); <u>Massena</u> v. <u>Bronstein</u>, 545 F. App'x 53, 55 (2d Cir. 2013); <u>Cancel</u> v. <u>Home Depot</u>, 488 F. App'x 520, 520 (2d Cir. 2012); <u>Spataro</u> v. <u>Glenwood Supply</u>, 479 F. App'x 403, 404 (2d Cir. 2012); <u>Starr</u> v. <u>Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 901 (2011); <u>Harris</u> v. <u>Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009); <u>Scerba</u> v. <u>Allied Pilots Ass'n</u>, 13 Civ. 3694, 2013 WL 6481583 at *6-7 (S.D.N.Y. Dec. 10, 2013) (Peck, M.J.); <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d 227, 229-30 (S.D.N.Y. 2013) (Peck, M.J.) (citing cases); <u>Mahoney</u> v. <u>Sony Music Entm't</u>, 12 Civ. 5045, 2013 WL 491526 at *4-5 (S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); <u>Toto, Inc.</u> v. <u>Sony Music Entm't</u>, 12 Civ. 1434, 2012 WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck, M.J.), <u>report & rec. adopted</u>, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013).

[3] Accord, <u>e.g.</u>, <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d at 230-31; <u>Tasini</u> v. <u>AOL, Inc.</u>, 851 F. Supp. 2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), <u>aff'd</u>, 505 F. App'x 45 (2d Cir. 2012); <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[4/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[5/]

---

[4/]     <u>Accord</u>, <u>e.g.</u>, <u>Grant</u> v. <u>Cnty. of Erie</u>, 542 F. App'x 21, 23 & n.1 (2d Cir. 2013); <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[5/]     <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2013) (Peck, M.J.); <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (quoting <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d at 98); <u>Drum Major Music Entm't Inc.</u> v. <u>Young Money Entm't, LLC</u>, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); <u>Maniolos</u> v. <u>United States</u>, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), <u>aff'd</u>, 469 F. App'x 56 (2d Cir.
(continued...)

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d at 134 (citations omitted).  In this case, the documents that Patterson attached to his amended complaint may be considered on the motions to dismiss, subject to the <u>Faulkner</u> v. <u>Beer</u> proviso.

## II.    PATTERSON'S § 1983 EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS CLAIMS SHOULD BE DISMISSED

Patterson asserts deliberate indifference claims against Correct Care Solutions ("CCS"), New York Correct Care Solutions ("NYCCS"), Sergeant Garrett, Sergeant Bell, and Nurse Practitioner Samuels.  (Dkt. No. 12: Am. Compl. ¶ II.D(A)-(B); <u>see</u> Dkt. No. 24: Defs. Br. at 2-4.)  Defendants move to dismiss on the ground that Patterson fails to allege that any defendant knowingly ignored a serious medical need as required to state a § 1983 deliberate indifference claim. (Defs. Br. at 6-8.)[6/]

---

[5/]      (...continued)
          2012).

[6/]      Patterson's deliberate indifference claims are analyzed below under the Eighth Amendment standards applicable to convicted prisoners.  If Patterson is a pretrial detainee rather than a convicted prisoner (Westchester County Jail houses both), his deliberate indifference claims are governed by the Due Process Clause of the Fourteenth Amendment, but "[t]he standard for such a claim is the same as one brought by a convicted prisoner under the Eighth Amendment." <u>Inesti</u> v. <u>Hogan</u>, 11 Civ. 2596, 2013 WL 791540 at *14-15 (S.D.N.Y. Mar. 5, 2013) (Peck, M.J.) (& cases cited therein), <u>report & rec. adopted</u>, 2013 WL 5677046 (S.D.N.Y. Sept. 30, 2013) (Crotty, D.J.).

A.      **Legal Standards Governing § 1983 Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims**

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994).

In order to prevail, Patterson must show that defendants were deliberately indifferent to Patterson's serious medical needs. See, e.g., Buffaloe v. Fein, 12 Civ. 9469, 2013 WL 3471060 at *1 (S.D.N.Y. July 11, 2013) (Peck, M.J.) (& cases cited therein).

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).[7] "Objectively, the alleged deprivation must be 'sufficiently serious' . . . ." Hathaway v. Coughlin, 99 F.3d at 553; Smith v. Carpenter, 316 F.3d at 183-84 ("The objective 'medical need' element measures the severity of the alleged deprivation . . . .").[8] "'The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .'" Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth

---

[7]      Accord, e.g., Fransua v. Vadlamudi, No. 05-1715, 2008 WL 4810066 at *1 (2d Cir. Nov. 3, 2008); Salahuddin v. Goord, 467 F.3d 263, 279-81 (2d Cir. 2006); Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003); Selby v. Coombe, 17 F. App'x 36, 37 (2d Cir. 2001); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

[8]      See also, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 279-81; Selby v. Coombe, 17 F. App'x at 37; Chance v. Armstrong, 143 F.3d at 702.

9

Amendment violation." <u>Wilson</u> v. <u>Seiter</u>, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (citation omitted); <u>see also</u>, <u>e.g.</u>, <u>Dean</u> v. <u>Coughlin</u>, 804 F.2d at 215 ("'[T]he essential test is one of medical necessity and not one simply of desirability.'").  Thus, the constitutional protection is limited to "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" <u>Chance</u> v. <u>Armstrong</u>, 143 F.3d at 702;[9/] <u>accord</u>, <u>e.g.</u>, <u>Fransua</u> v. <u>Vadlamudi</u>, 2008 WL 4810066 at *1; <u>Harrison</u> v. <u>Barkley</u>, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'").

The Second Circuit has stated that determining whether a deprivation is objectively serious entails two inquiries:

> Determining whether a deprivation is an objectively serious deprivation entails two inquiries.  <u>The first inquiry is whether the prisoner was actually deprived of adequate medical care.</u>  As the Supreme Court has noted, the prison official's duty is only to provide reasonable care.  Thus, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable . . ." and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.  For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and

---

[9/]    The Second Circuit in <u>Chance</u> v. <u>Armstrong</u> identified several factors that are relevant in determining whether a serious medical condition exists, including "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" 143 F.3d at 702.

the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Thus, although we sometimes speak of a "serious medical condition" as the basis for [such a] claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Salahuddin v. Goord, 467 F.3d at 279-80 (citations omitted, emphasis added).

Where the plaintiff alleges delay or interruption in treatment rather than failure to receive treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." Smith v. Carpenter, 316 F.3d at 186. "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes." Id. (citing Chance v. Armstrong, 143 F.3d at 702-03). "The absence of adverse medical effects or demonstrable physical injury is one . . . factor that may be used to gauge the severity of the medical need at issue. Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Id. at 187 (citations omitted).

"Subjectively, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d at 553; accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 280-81; Smith v. Carpenter, 316 F.3d at 184 ("[T]he subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."); Selby v. Coombe, 17 F. App'x at 37; Chance v. Armstrong, 143 F.3d at 702. "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quotations omitted, quoting Hathaway v. Coughlin, 99 F.3d at 553 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994))); see, e.g., Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) (to establish a violation of his Fourteenth Amendment due process rights, a plaintiff "must prove, inter alia, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware").[10/]

   Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison [officials or] guards in intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976) (fn. omitted). However, an "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." Id. at 105-06, 97 S. Ct. at 292; accord, e.g., Burton v. N.Y.S. Dep't of Corr., 93 Civ. 6028, 1994 WL 97164 at *2 (S.D.N.Y. Mar. 21, 1994) (Sotomayor, D.J.).  "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . ." Estelle v. Gamble, 429 U.S. at 106, 97 S. Ct. at 292.[11/]  As the Supreme Court has

---

[10/]  See also, e.g., Sinkov v. Americor, Inc., 419 F. App'x 86, 89 (2d Cir. 2011) ("evidence 'that [a defendant] should have been aware that [the detainee] was in immediate danger' was insufficient"); Mayo v. Cnty. of Albany, 357 F. App'x 339, 341 (2d Cir. 2009) ("A plaintiff bringing a deliberate indifference claim must therefore demonstrate that the defendant deliberately disregarded knowledge of the harm he knew he could cause as a result of his actions."); Ross v. Westchester Cnty. Jail, 10 Civ. 3937, 2012 WL 86467 at *5 (S.D.N.Y. Jan. 11, 2012) ("Deliberate indifference is a mental state akin to 'recklessness,' and is measured using a 'subjective test' that discerns whether the defendant was 'actually aware of an excessive risk to an inmate's health or safety,' and therefore 'act[ed] with a sufficiently culpable state of mind.'" (citation omitted)); Mercado v. City of N.Y., 08 Civ. 2855, 2011 WL 6057839 at *4 (S.D.N.Y. Dec. 5, 2011).

[11/]  Accord, e.g., Salahuddin v. Goord, 467 F.3d at 280; Hathaway v. Coughlin, 99 F.3d at 553;
                      (continued...)

stated, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Id.; accord, e.g., Smith v. Carpenter, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."); Hathaway v. Coughlin, 99 F.3d at 553; Burton v. N.Y.S. Dep't of Corr., 1994 WL 97164 at *2.

### B.    Application to Patterson's Deliberate Indifference to Serious Medical Needs Claims

Reading the amended complaint liberally, Patterson alleges deliberate indifference to his serious medical needs on the following bases: (1) defendants unreasonably delayed taking an x-ray and reporting the results for several days; (2) defendants failed to treat his pain effectively by issuing Motrin instead of a stronger painkiller; and (3) defendants unreasonably delayed issuing crutches which forced him to walk around the facility without assistance for several days, and then issued crutches that were too small.  (Dkt. No. 12: Am. Compl. ¶ II.D(B).)

Patterson's complaint states that he was injured on a Friday evening, December 1, 2012, and immediately upon complaining was treated with ice, Motrin for the pain, and an Ace bandage to wrap his ankle.  (See page 2 above.)  He continued receiving Motrin for the pain on a daily basis and had an x-ray taken three days later on December 4, 2012.  (See page 2 above.)  On December 7, 2012, while the facility was awaiting the x-ray results, Patterson complained of pain and promptly was seen by a nurse who assured him they had not received the results but that the doctor would have called if something were seriously wrong.  (See page 3 above.)  Patterson received his x-ray results showing he had torn ligaments on December 12, 2012, and was given

---

[11/]    (...continued)
Felipe v. N.Y.S. Dep't of Corr. Servs., No. 95-CV-1735, 1998 WL 178803 at *3 (N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.).

13

crutches simultaneously with the diagnosis.  (<u>See</u> page 3 above.)  When Patterson complained that

the crutches were too short two days later, he was seen by a nurse who recommended that he keep

his ankle elevated and told him new crutches would be issued soon.  (<u>See</u> page 3 above.)

Taken together, Patterson's allegations fail to satisfy either the objective or subjective

requirements of a deliberate indifference claim.

### 1.    The Eighth Amendment's Objective Requirement

Patterson's torn ankle ligaments do not constitute the type of serious medical need

required to state a § 1983 Eighth Amendment deliberate indifference claim.  Unlike cases where

injuries demonstrate the requisite urgency leading to "death, degeneration or extreme pain," the case

law holds that prisoner complaints about ligaments or other ankle problems do not establish the

objective prong of the deliberate indifference standard.  <u>See</u>, <u>e.g.</u>, <u>Chatin</u> v. <u>Artuz</u>, 28 F. App'x 9,

10 (2d Cir. 2001) (Plaintiff's "condition, which medical staff at various stages of his treatment

diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness

that the Eighth Amendment requires."); <u>Brown</u> v. <u>DeFrank</u>, 06 Civ. 2235, 2006 WL 3313821 at *21

(S.D.N.Y. Nov. 15, 2006) (Peck, M.J.) (collecting cases).[12]

Even if his torn ankle ligaments were a serious medical need, Patterson was seen

promptly when he first injured his ankle and every time that he complained thereafter, and was

---

[12]    <u>See also</u>, <u>e.g.</u>, <u>Price</u> v. <u>Engert</u>, 589 F. Supp. 2d 240, 246 (W.D.N.Y. 2008) (collecting cases);
<u>Johnson</u> v. <u>Wright</u>, 477 F. Supp. 2d 572, 575-76 (W.D.N.Y. 2007) (collecting cases), <u>aff'd</u>,
324 F. App'x 144 (2d Cir. 2009); <u>Veloz</u> v. <u>New York</u>, 35 F. Supp. 2d 305, 312 (S.D.N.Y.
1999) (Plaintiff's "foot condition did not constitute a 'serious medical need.'  Granted,
[plaintiff] suffers from pain in his foot . . . .  However, [plaintiff's] condition was not 'one of
urgency that may produce death, degeneration, or extreme pain,' and was, in comparison, far
less serious than the types of conditions the other cases illustrate qualify as serious medical
needs." (citation omitted)); <u>Alston</u> v. <u>Howard</u>, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996)
(ankle injury not sufficiently serious to establish a constitutional violation).

treated with an Ace bandage, ice packs, Motrin and eventually crutches.  Under these circumstances, the alleged delays in Patterson's treatment did not create an objectively serious risk of harm.  First, the several-day delay in taking and reporting the results of an x-ray that revealed torn ankle ligaments does not constitute a sufficiently serious treatment delay.  See, e.g., Chatin v. Artuz, 28 F. App'x at 11 (claim that "officials waited two days before taking him to the hospital for x-rays" does not "rise[] to the level of deliberate indifference to [plaintiff's] serious medical needs"); see also, e.g., Scott v. Laux, No. 07-CV-936, 2008 WL 4371778 at *4 (N.D.N.Y. Sept. 18, 2008) ("'[D]isagreements over . . . diagnostic techniques (e.g., the need for X-rays) . . . are not adequate grounds for a § 1983 claim.'"); Williamson v. Goord, No. 02-CV-00521, 2006 WL 1977438 at *21 (N.D.N.Y. July 11, 2006) ("[E]ven if Plaintiff's allegations are true that, between January 2002 and March 2002, Defendants . . . delayed in seeing Plaintiff, failed to provide an MRI for Plaintiff, and failed to refer Plaintiff to an orthopedic specialist in connection with injuries to Plaintiff's left knee and left ankle, those failures did not threaten to produce death or degeneration, or produce extreme pain, under the law.").

Second, the failure to issue pain medication stronger than Motrin is an insufficiently serious deprivation, particularly since there is no allegation that a stronger medication was prescribed after the ankle injury was diagnosed.  See, e.g., Morrison v. Mamis, 08 Civ. 4302, 2008 WL 5451639 at *10 (S.D.N.Y. Dec. 18, 2008) (Peck, M.J.) (doctor's decision regarding type and dosage of pain medication was reasonable and plaintiff's disagreement with the treatment did not give rise to Eighth Amendment claim), report & rec. adopted, 2009 WL 2168845 (S.D.N.Y. July 20, 2009) (Crotty, D.J.); Wright v. N.Y.S. Dep't of Corr. Servs., 06 Civ. 3400, 2008 WL 5055660 at *17 (S.D.N.Y. Oct. 10, 2008) (physician's decision to start plaintiff at a lower dosage of medication than recommended by plaintiff's gastroenterologist "qualifies as an exercise of 'medical judgment,' and

does not give rise to a constitutional violation"), <u>report & rec. adopted</u>, 2008 WL 5084193 (S.D.N.Y. Nov. 24, 2008), <u>aff'd</u>, 372 F. App'x 175 (2d Cir. 2010); <u>Scott</u> v. <u>Laux</u>, 2008 WL 4371778 at *4 ("'[D]isagreements over medications . . . are not adequate grounds for a § 1983 claim.'"); <u>Goros</u> v. <u>Pearlman</u>, No. 03-CV-1303, 2007 WL 1423718 at *3 (N.D.N.Y. May 10, 2007) ("Plaintiff[']s disagreements over the proper dosage of Prevacid or how long a canister of albuterol lasts does not evidence deliberate disregard."); <u>Messa</u> v. <u>LeClaire</u>, No. 03-CV-1385, 2007 WL 2292975 at *6 n.8 (N.D.N.Y. Feb. 26, 2007) ("To the extent that [plaintiff] contends he should have been provided the pain medication recommended by the outside specialist, this claim must fail because mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate."), <u>report & rec. adopted</u>, 2007 WL 2288106 (N.D.N.Y. Aug 6, 2007).

Third, the several-day delay in issuing Patterson crutches and the temporary issuance of crutches that Patterson believed were too small, during which period he had an Ace bandage to wrap his ankle and Motrin to alleviate pain, are insufficient as a matter of law to constitute a sufficiently serious deprivation. <u>See</u>, <u>e.g.</u>, <u>Chatin</u> v. <u>Artuz</u>, 28 F. App'x at 10-11 (Plaintiff "claims that the medical attention he received at Green Haven Correctional Facility was inadequate because . . . a nurse failed to provide him immediately with crutches, ice or pillows . . . .  None of these allegations rises to the level of deliberate indifference to [plaintiff's] serious medical needs."); <u>Williamson</u> v. <u>Goord</u>, 2006 WL 1977438 at *21.

Since Patterson's treatment was reasonable, defendants cannot be found liable, <u>see</u> <u>Farmer</u> v. <u>Brennan</u>, 511 U.S. 825, 845, 114 S. Ct. 1970, 1983 (1994); <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d 263, 279 (2d Cir. 2006), even if Patterson was disappointed by the treatment decisions regarding his crutches and pain medication. <u>See</u>, <u>e.g.</u>, <u>Thompson</u> v. <u>Racette</u>, 519 F. App'x 32, 34 (2d Cir. 2013) ("'It is well-established that mere disagreement over the proper treatment does not create a

constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.'"); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); Byng v. Wright, 09 Civ. 9924, 2012 WL 967430 at *9 (S.D.N.Y. Mar. 20, 2012); Scott v. Laux, 2008 WL 4371778 at *4; Brown v. Selwin, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999), aff'd, 29 F. App'x 762 (2d Cir. 2002); see also cases cited at pages 14-15 above.

### 2.     The Eighth Amendment's Subjective Requirement

As to the subjective component, Patterson's allegations fail to establish that any defendant had a reckless disregard for his medical needs.  Contrary to his claim that defendants were subjectively deliberately indifferent to his needs, Patterson's allegations show that he received immediate and constant treatment beginning on the evening his injury occurred, and that he was seen and treated every time he submitted a sick call complaint.  (See pages 12-13 above.)  Patterson does not deny that he received all of this treatment, complaining instead only about the timeliness or type of treatment he received, which is insufficient as a matter of law to satisfy the subjective requirement.

For example, the fact that Patterson's torn ligaments were not diagnosed and he did not receive crutches until the x-ray results were returned to the facility eight days later is insufficient to satisfy the subjective element—i.e., to show that the delay resulted from a deliberate disregard as opposed to normal prioritization or accessibility of available care.[13]  Likewise, Patterson's

---

[13]    See, e.g., Clark v. Swain, No. 08-CV-0637, 2011 WL 6938458 at *3 (W.D.N.Y. Oct. 12, 2011) ("Plaintiff concedes that defendant . . . examined plaintiff, diagnosed his injury as a sprain, wrapped his ankle in an ace bandage and returned plaintiff to his housing unit with crutches and Tylenol.  That her initial examination did not diagnose plaintiff's injury as a ruptured achilles tendon or cause her to refer plaintiff for immediate transfer to a hospital, is insufficient, without more, to satisfy the subjective element of a claim of deliberate indifference to a serious medical need."), report & rec. adopted, 2012 WL 11128 (W.D.N.Y.
(continued...)

allegations regarding the two Sergeants also are insufficient, since Patterson fails to allege that any

inadequate medical care or delay in care was caused by their alleged inaction (whether failure to

accept his grievance or report his injury to supervisors).  To the contrary, the evidence shows that

when Patterson later relayed his concerns to a nurse on December 7, 2012, including the Sergeants'

failure to accept his grievance, the nurse told Patterson that his x-ray results simply were not ready

yet, thus refuting any suggestion that he was being deliberately deprived.[14]

        In light of the overall quantity and quality of treatment and care Patterson received

during the two weeks following his injury, Patterson fails to establish that defendants were

subjectively deliberately indifferent to his medical needs.  See, e.g., Buffaloe v. Fein, 12 Civ. 9469,

2013 WL 5815371 at *8 (S.D.N.Y. Oct. 24, 2013) (Peck, M.J.) (no subjective deliberate indifference

given the "high frequency of care" plaintiff received (citing cases)); Smolen v. Fischer, 12 Civ.

1856, 2012 WL 3609089 at *2, *12 (S.D.N.Y. Aug. 23, 2012) (Peck, M.J.) (Plaintiff's "complaint

asserts that [the defendant] Nurse . . . failed to order any tests at the time of the incident and failed

---

[13]    (...continued)
Jan. 3, 2012); Williamson v. Goord, No. 02-CV-00521, 2006 WL 1977438 at *21 (N.D.N.Y.
July 11, 2006) ("Even if Plaintiff has established a serious medical need, no evidence exists
suggesting that Defendants . . . acted with criminal recklessness with regard to that need.
For example, the evidence demonstrates that Defendant . . . acted promptly and dutifully in
requesting medical procedures for Plaintiff, examining Plaintiff, referring Plaintiff for x-ray
examinations, and prescribing medications for Plaintiff." (citation omitted)).

[14]    See, e.g., Farray v. Green, No. 12-CV-4717, 2013 WL 5676315 at *4 (E.D.N.Y. Oct. 16,
2013) ("[P]laintiff bases his claim for inadequate medical care on the fact that he was told
to go back to his cell after his injury and that, when he complained to the defendants, they
ignored him.  He does not allege that the medical treatment he received was in any way
inadequate.  He admits that he was only ignored for 'several minutes,' that defendant
[correction officer] 'shortly came' to plaintiff's cell after plaintiff called for medical attention,
that [the correction officer] 'immediately' called for medical attention when he saw that
plaintiff's foot was swollen, and that plaintiff received medical treatment that 'same night.'
These allegations cannot give rise to an inference of deliberate indifference to serious
medical needs." (citations omitted)).

to recommend any follow up medical tests and medical treatment. . . .  Accepting [plaintiff's] allegations as true for purposes of this motion, nevertheless they do not indicate that [the Nurse] 'act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result.' Thus, accepting [plaintiff's]  version of events as true and drawing all reasonable inferences in his favor, no reasonable fact-finder could conclude that [the Nurse] acted with deliberate indifference to [plaintiff's] medical needs.  [The defendant Nurse's] motion to dismiss should be GRANTED." (citations omitted)); Morrison v. Mamis, 08 Civ. 4302, 2008 WL 5451639 at *8 (S.D.N.Y. Dec. 18, 2008) (Peck, M.J.) (no subjective deliberate indifference where "nurses dispensed medicine to [plaintiff] and responded to his complaints almost every day"), report & rec. adopted, 2009 WL 2168845 (S.D.N.Y. July 20, 2009) (Crotty, D.J.); Abney v. McGinnis, 01 Civ. 8444, 2007 WL 844675 at *3 (S.D.N.Y. Mar. 16, 2007) (no subjective deliberate indifference where the orthotics specialist met with plaintiff thirteen times within an almost two year period); Rivera v. Goord, 253 F. Supp. 2d 735, 755 (S.D.N.Y. 2003) (Chin, D.J.) (no subjective deliberate indifference where plaintiff "was frequently examined and treated for various conditions by a total of 21 different doctors," received pain medication on a regular basis and plaintiff "acknowledges that Green Haven medical staff listened to his complaints, provided him with medical care, and routinely tested him for various ailments"); Davidson v. Scully, 155 F. Supp. 2d 77, 84 (S.D.N.Y. 2001) (no subjective deliberate indifference to plaintiff's foot problems where "plaintiff was examined and treated . . . on numerous occasions by DOCS medical personnel as well as by outside orthopedic doctors to whom plaintiff was referred by DOCS").[15/]

---

[15/]   See also, e.g., Williams v. M.C.C. Inst., 97 Civ. 5352, 1999 WL 179604 at *9 (S.D.N.Y. Mar. 31, 1999) (no subjective deliberate indifference where plaintiff was examined on eight separate occasions during one year and five different occasions the next year and was always (continued...)

Accordingly, defendants' motion to dismiss Patterson's § 1983 deliberate indifference to serious medical needs claims should be <u>GRANTED</u>.

## III.   <u>PATTERSON'S MONELL CLAIM SHOULD BE DISMISSED</u>

Patterson asserts a <u>Monell</u> claim against all defendants "for having a custom pattern and policy that violates [his] civil rights."   (Dkt. No. 12: Am. Compl. ¶ II.D(B); <u>see</u> Dkt. No. 24: Defs. Br. at 4.)  Defendants argue that Patterson fails to allege the existence of a municipal policy that resulted in a constitutional violation.  (Dkt. No. 21: Westchester Br. at 4-5; Defs. Br. at 9-10.)

### A.   <u>Standards Governing Monell Claims</u>

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior.  <u>E.g.</u>, <u>Monell</u> v. <u>Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); <u>Patterson</u> v. <u>Cnty. of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004); <u>DeCarlo</u> v. <u>Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998); <u>Zahra</u> v. <u>Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995); <u>Ricciuti</u> v. <u>N.Y.C. Transit Auth.</u>, 941 F.2d 119, 122 (2d Cir. 1991).  Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or

---

[15/]   (...continued)
given treatment when he sought it), <u>aff'd</u>, 101 F. App'x 862 (2d Cir. 2004); <u>Keyes</u> v. <u>Strack</u>, 95 Civ. 2367, 1997 WL 187368 at *4 (S.D.N.Y. Apr. 16, 1997) (Chin, D.J.) (no subjective deliberate indifference where the "medical staff made continual efforts to treat and care for plaintiff," including thirty visits to the facility's clinic over an eleven month period); <u>Alston</u> v. <u>Howard</u>, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (no subjective deliberate indifference where plaintiff "was afforded consistent, attentive surgical and therapeutic medical care on about a weekly basis"); <u>Johnson</u> v. <u>Dep't of Corr.</u>, 92 Civ. 7716, 1995 WL 121295 at *3 (S.D.N.Y. Mar. 21, 1995) (no subjective deliberate indifference where "[d]uring the nine month period that plaintiff was in DOC custody he was examined and treated on numerous occasions for his hip condition and a myriad of other ailments").

policy.  See, e.g., Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  The plaintiff need not identify an explicit, official policy or practice.  See, e.g., Patterson v. Cnty. of Oneida, 375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). It is sufficient to show a widespread pattern of behavior that constitute a "custom or usage with the force of law" or "the constructive acquiescence of senior policy-making officials." Patterson v. Cnty. of Oneida, 375 F.3d at 226 (quotations omitted); see, e.g., Connick v. Thompson, 131 S. Ct. at 1359 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); Belpasso v. City of N.Y., 07 Civ. 3627, 2008 WL 2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v. Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9 (S.D.N.Y. June 22, 2007), aff'd, 554 F.3d 60 (2d Cir. 2009).  "A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" Patterson v. Cnty. of Oneida, 375 F.3d at 226; see, e.g., Connick v. Thompson, 131 S. Ct. at 1359.  Any analysis of an allegation of municipal liability under § 1983 begins with "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

**B.     Application to Patterson's Monell Claim**

Patterson alleges that Westchester County has "a pattern/policy that directly violates [his] civil rights such as a delay in receiving x-ray."  (Dkt. No. 12: Am. Compl. ¶ II.D(B)-(C).)

Patterson's amended complaint, however, does not allege any facts demonstrating that Westchester County (or any of the other defendants) has such a policy or custom.

It is well established that where, as here, the only alleged facts pertain to a single incident—i.e., the treatment of Patterson's one-time ankle injury—such allegations are insufficient to raise an inference of the existence of a municipal custom or policy. See, e.g., Dyno v. Vill. of Johnson City, 240 F. App'x 432, 434 (2d Cir. 2007) ("'A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.'"), cert. denied, 552 U.S. 1310, 128 S. Ct. 1874 (2008); Ulysses I & Co. v. Morton, 11 F. App'x 14, 16 (2d Cir.), cert. denied, 534 U.S. 992, 122 S. Ct. 458 (2001); accord, e.g., Powell v. Gardner, 891 F.2d 1039, 1045 (2d Cir 1989); Baines v. City of N.Y., 10 Civ. 9545, 2014 WL 1087973 at *3 (S.D.N.Y. Mar. 19, 2014); Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 36752 at *6 (S.D.N.Y. Jan. 6, 2006) (Peck, M.J.); McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 706 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.).[16/]

Patterson's unsupported assertions that "it has also been brought to [his] attention that defendant [] has several claims pending for similar violations of prisoners rights in this court" and

---

[16/] See also, e.g., Henderson v. Town of Greenwich, 317 F. App'x 46, 47 (2d Cir. 2009) ("'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell.'"); Acquaah v. State Univ. of N.Y. Health Sci. Ctr., No. 99-7350, 199 F.3d 1321 (table), 1999 WL 1022495 (2d Cir. Oct. 27, 1999) (Plaintiff "made no allegation of an official custom or policy, and detailed only her own alleged mistreatment by hospital personnel in her complaint. Her description of this single incident is insufficient to make out a prima facie case under § 1983, and the complaint was properly dismissed for failure to state a claim."); Berry v. Vill. of Millbrook, 815 F. Supp. 2d 711, 720 (S.D.N.Y. 2011) ("'[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" (quoting Okla. City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436 (1985))).

that "all defendants have or had cases in this court for similar behavior" (Am. Compl. ¶ II.D(B)-

(C))—which are the only allegations that could be construed as an attempt to plead the existence of

a custom or policy—are likewise inadequate as a matter of law.  See, e.g., Jean-Laurent v.

Wilkerson, 461 F. App'x 18, 22-23 (2d Cir. 2012) (plaintiff's "citation to various lawsuits" was "not

probative of the existence of an underlying policy that could be relevant"); Batista v. Rodriguez, 702

F.2d 393, 399 (2d Cir. 1983) ("plaintiffs' complaint failed to state a claim entitling them to relief

against the City under § 1983" where only support for existence of alleged City policy "was

evidence of a few other cases in which" defendants were "found responsible for civil rights

violations and not disciplined"); Jones v. City of N.Y., No. 12-CV-3658, 2013 WL 6047567 at *13

(E.D.N.Y. Nov. 14, 2013) ("[T]he existence of other lawsuits against the City alleging similar

violations of constitutional rights also does not establish a policy or custom as necessary under

Monell."); Ezagui v. City of N.Y., 726 F. Supp. 2d 275, 284 (S.D.N.Y. 2010) ("That this issue may

have been raised in other cases does not cure the facial inadequacy in Plaintiff's Complaint.  It is

well settled that the mere assertion that a municipality has a custom, policy or practice that led to

the alleged unconstitutional deprivation is 'generally insufficient to establish Monell liability.'").[17]

---

[17]     See also, e.g., Ameduri v. Vill. of Frankfort, No. 11-CV-50, --- F. Supp. 2d ----, 2014 WL
1311929 at *19 (N.D.N.Y. Mar. 31, 2014); Kraft v. City of N.Y., 696 F. Supp. 2d 403, 420-
21 (S.D.N.Y. 2010) (Chin, D.J.) ("Plaintiff has not, however, produced any evidence
showing that any of the alleged constitutional violations were a result of a City policy or the
City's deliberate indifference.  Although plaintiff lists other cases in which other plaintiffs
have made similar allegations with respect to their involuntary hospitalizations, plaintiff
alleges no facts and provides no evidence supporting a Monell claim.  Plaintiff's claim that
the municipal defendants' unconstitutional customs and policies may be 'inferred' from the
list of cases fails to 'set out specific facts showing a genuine issue for trial.'  The City's
motion is therefore granted as to the Monell claim." (citations omitted)), aff'd, 441 F. App'x
24 (2d Cir. 2011).

Attached to Patterson's original complaint (Dkt. No. 2), but not his amended complaint, is
(continued...)

Finally, and most importantly, the Court's determination that Patterson has not alleged a constitutional violation (see Part II above) is fatal to his Monell claim, since the existence of a municipal policy only would be actionable if it were causally connected to a constitutional violation.  See, e.g., O'Leary v. City of N.Y., 938 F. Supp. 2d 410, 417 (E.D.N.Y. 2013) ("To state a claim for municipal liability under Monell, a plaintiff must show (1) a violation of his constitutional rights, and (2) that the violation was caused by a municipal policy or custom.  Because this Court has already concluded that Plaintiff has not suffered any violation of his constitutional rights, his Monell claim must be dismissed." (citations omitted)); see also cases cited on pages 19-20 above.

Accordingly, defendants' motions to dismiss Patterson's Monell claim should be GRANTED.[18]

---

[17]   (...continued)
a November 19, 2009 letter from the Department of Justice to the Westchester County Executive detailing findings of the investigation as to certain practices at the Westchester County Jail.  Even if the Court could still consider that letter, it is of no help to Patterson.  The "medical care deficiencies" identified by the Department of Justice involved infection control and inadequate access to dental care (DOJ Ltr. at 19-22), not medical care as to ankles, x-rays or anything similar to Patterson's claims.  See, e.g., Worrell v. City of N.Y., No. 12-CV-6151, 2014 WL 1224257 at *12 n.7 (E.D.N.Y. Mar. 24, 2014); Toliver v. City of N.Y., 10 Civ. 5806, 2012 WL 6849720 at *6 & n.13 (S.D.N.Y. Sept. 25, 2012), report & rec. adopted, 2013 WL 146088 (S.D.N.Y. Jan. 14, 2013).

[18]   Patterson's Monell claim likewise is insufficient as against the remaining defendants (see Am. Compl. ¶ II.D(B): "I raise a Monell claim against all defendants"), since official capacity claims against municipal officials are treated as raised against the municipality itself.  See e.g., Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"); Coon v. Town of Springfield, 404 F.3d 683, 687 (2d Cir. 2005) ("a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself"); Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("the claim against defendants . . . in their official capacity is essentially a claim against the village").  Accordingly, defendants' motion to dismiss Patterson's Monell claim also should be
(continued...)

## IV.   PATTERSON'S ADA CLAIM SHOULD BE DISMISSED

        In a one-sentence allegation, Patterson asserts that Westchester County, CCS and NYCCS violated the ADA by "not providing [him] with any sort of assistance upon first realizing [his] injury and forcing [him] to walk long distances to obtain [his] food meal trays three times a day and [] forcing [him] to travel thru out the facility without any kind of support."  (Dkt. No. 12: Am. Compl. ¶ II.D(C).)  Defendants move to dismiss on the ground that Patterson's allegations fail to state a claim under the ADA, arguing that Patterson "merely invokes the popular name of the statute without any factual pleading to establish either how he is entitled to the protections of the act or how the named defendants violated it."  (Dkt. No. 24: Defs. Br. at 12-13.)  The Court agrees.

        Because Patterson's allegations relating to his ankle injury fail to state an Eighth Amendment deliberate indifference claim (see Part II above), his allegations likewise fail to make out an ADA claim.  See, e.g., Brown v. DeFrank, 06 Civ. 2235, 2006 WL 3313821 at *28 (S.D.N.Y. Nov. 15, 2006) (Peck, M.J.) ("Because [plaintiff's] Eighth Amendment claims relating to his bunions fail to state a claim for [] deliberate indifference, those claims similarly fail under the ADA . . . . Defendants' motion to dismiss [plaintiff's] ADA . . . claims relating to his bunions is therefore GRANTED." (citation omitted)); see also, e.g., Bell v. Galani, No. 10-CV-1577, 2012 WL 1037452 at *9 (N.D.N.Y. Feb. 9, 2012) ("A prisoner may sue a public agency or an officer in his official capacity for violating the ADA, but only if the conduct complained of also violates the Eighth Amendment."), report & rec. adopted, 2012 WL 1037117 (N.D.N.Y. Mar. 27, 2012).

---

[18]/     (...continued)
GRANTED as against CCS, NYCCS, Sergeant Garrett, Sergeant Bell and Nurse Practitioner Samuels—Patterson's claims against them in their individual capacities are addressed above. (See Part II above.)

Moreover, Patterson's failure to plead even a formulaic recitation of an ADA claim's elements, let alone facts sufficient to establish each element (see Defs. Br. at 13), requires dismissal of his ADA claim.  See, e.g., Gershanow v. Cnty. of Rockland, 11 Civ. 8174, 2014 WL 1099821 at *5 (S.D.N.Y. Mar. 20, 2014) (dismissing plaintiff's ADA claim where he "does not even recite the formulaic elements of a claim for money damages under Title II" of the ADA).[19/]

Accordingly, defendants' motion to dismiss Patterson's ADA claim should be GRANTED.

## V.   ANY REMAINING CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE UNDER THE UNITED MINE WORKERS v. GIBBS DOCTRINE

Any remaining causes of action arising from Patterson's allegations, i.e., negligent hiring, medical malpractice and/or negligence (see Dkt. No. 24: Defs. Br. at 3-4), are state law

---

[19/]   See also, e.g., Daniels v. Arnone, No. 13-cv-1371, 2013 WL 5671047 at *3 (D. Conn. Oct. 11, 2013) (Plaintiff "has not identified any program or service from which he has been excluded or denied benefits as a result of his disabilities.  Indeed, he fails to identify the disability itself.  The complaint contains one reference to his use of a cane.  Because he has not identified any program or service and the court cannot consider how any of his claims relate to any exclusion or denial based on a possible disability, [plaintiff] fails to state a plausible claim for violation of the ADA . . . ."); Alsaifullah v. Furco, 12 Civ. 2907, 2013 WL 3972514 at *19 (S.D.N.Y. Aug. 2, 2013) ("[T]he Court need not engage in an extensive analysis of the ADA requirements because Plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the walkway or an alternative to traveling through the walkway—because of his disability. . . . Thus, Plaintiff's ADA claim is DISMISSED."); Brady v. Chittenden Corr. Facility, No. 12-CV-41, 2012 WL 5929950 at *3 (D. Vt. Oct. 18, 2012) ("In the absence of any allegations whatsoever that are relevant to a claim under the ADA, [plaintiff's] ADA claim should be DISMISSED."), report & rec. adopted, 2012 WL 5935702 (D. Vt. Nov. 27, 2012); Vega v. Rell, No. 09CV737, 2012 WL 2860793 at *3 (D. Conn. July 9, 2012) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his disability.  In th[is] cause of action, the plaintiff is challenging the medical treatment he was provided for his complaints of chronic back and leg pain, presumably the basis for his disability.  This challenge does not constitute a separate ADA claim.  The ADA claim . . . is dismissed . . . ." (citations omitted)).

claims.  Since Patterson's amended complaint did not allege diversity jurisdiction and his federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over Patterson's state law claims (if any really are alleged).  See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7, 108 S. Ct. 614, 619 & n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966); Gilmore v. Gilmore, 503 F. App'x 97, 100 (2d Cir. 2012); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008); Quinones v. Mamis-King, 155 F. App'x 547, 548 (2d Cir. 2005); Gelb v. Bd. of Elections of City of N.Y., 155 F. App'x 12, 15 (2d Cir. 2005), cert. denied, 547 U.S. 1129, 126 S. Ct. 2030 (2006).  Thus, Patterson's remaining state law claims should be dismissed without prejudice.[20]

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss (Dkt. Nos. 19 & 22) should be GRANTED.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.[21]  Such objections (and any responses to objections) shall be

---

[20]    In light of the foregoing, this Court need not address the additional ground for dismissal advanced by defendants, i.e., that Patterson's failure to comply with state law requirements for bringing suit warrants dismissal.  (Defs. Br. at 11-12.)

[21]    If Patterson requires copies of any of the cases reported only in Westlaw, he should request
(continued...)

27

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 1350, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Crotty (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:         New York, New York
               April 11, 2014

                                        Respectfully submitted,

                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:     James Patterson (Mail)
               James J. Wenzel, Esq. (ECF)
               John M. Murtagh, Jr., Esq. (ECF)
               Judge Paul A. Crotty

---

[21]/     (...continued)
          copies from defendants' counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009);
          SDNY-EDNY Local Civil Rule 7.2.